**TOSTRUD LAW GROUP, P.C.**
JON A. TOSTRUD
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
Facsimile: (310) 278-2640
Email: jtostrud@tostrudlaw.com

***Counsel for Plaintiff***

[***Additional Counsel on Signature Page***]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEWIS STEIN, Individually and On Behalf of All Others Similarly Situated, | Case No.: 19-2428 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| MELLANOX TECHNOLOGIES, LTD., IRWIN FEDERMAN, JON A. OLSON, GLENDA DORCHAK, AMAL M. JOHNSON, JACK R. LAZAR, UMESH PADVAL, DAVID PERLMUTTER, STEVE SANGHI, EYAL WALDMAN, and GREGORY L. WATERS, NVIDIA INTERNATIONAL HOLDINGS INC., TEAL BARVAZ LTD., AND NVIDIA CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Lewis Stein ("Plaintiff"), on behalf of himself, by his undersigned attorneys, for his complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is a class action brought by Plaintiff on behalf of himself and all other similarly situated public shareholders of Mellanox Technologies, LTD. ("Mellanox" or the "Company") against the above-captioned Defendants, including Mellanox and the members of the Company's board of directors (referred to as the "Board" or the "Individual Defendants," and, together with Mellanox, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the acquisition of Mellanox by NVDIA International Holdings Inc.

2.      On March 10, 2019, Mellanox, NVDIA International Holdings Inc. ("Parent"), Teal Barvaz Ltd., a wholly owned subsidiary of Parent ("Merger Sub"), and NVDIA Corporation ("NVIDA" or "Guarantor") entered into an Agreement and Plan of Merger (the "Merger Agreement").

3.      Pursuant to the Merger Agreement (i) the Merger Sub will merge with and into Mellanox with Mellanox surviving the merger and (ii) following this merger Mellanox will be a wholly owned subsidiary of Parent (the "Proposed Transaction").

4.      On April 22, 2019 in order to convince the Company's public common shareholders to vote in favor of the Proposed Transaction, Mellanox filed a materially incomplete and misleading Preliminary Proxy Statement on Form PREM 14A (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      The Proxy contains materially incomplete and misleading information concerning: (i) the valuation analyses prepared by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Credit Suisse Securities (USA) LLC's ("Credit Suisse") (the "Company Financial Advisors"), in support of its fairness opinion.

6.     Additionally, although the Proxy does not yet set the date for the special meeting of Mellanox's shareholders to vote on the Proposed Transaction (the "Stockholder Vote"), their joint press release does state the merger parties' intention to conclude this merger by the end of the calendar year of 2019.   It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Mellanox shareholders can properly exercise their corporate suffrage rights

**JURSIDICTION AND VENUE**

7.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.     Personal jurisdiction exists over each Defendant either because each Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (i) the conduct at issue will have an effect in this District; (ii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (iii) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

**Plaintiff**

10.     *Plaintiff Lewis Stein* ("Plaintiff") is, and at all relevant times, has been a Mellanox stockholder.

**Defendants**

11.    **Defendant Mellanox Technologies, Ltd.** ("Mellanox") is an Israel corporation with its U.S. corporate headquarters located at 350 Oakmead Parkway, Suite 100, Sunnyvale, CA 94085.  Mellanox common stock is traded under the ticker symbol "MLNX".

12.    **Defendant Irwin Federman** ("Federman") is, and has been at all relevant times, a director of the Company, and currently serves as the Company's Chairman of the Board of Directors

13.    **Defendant Jon A. Olson** ("Olson") is, and has been at all relevant times, a director of the Company.

14.    **Defendant Glenda Dorchak** ("Dorchak") is, and has been at all relevant times, a director of the Company.

15.    **Defendant Amal M. Johnson** ("Johnson") is, and has been at all relevant times, a director of the Company.

16.    **Defendant Jack R. Lazar** ("Lazar") is, and has been at all relevant times, a director of the Company.

17.    **Defendant Umesh Padval** ("Padval") is, and has been at all relevant times, a director of the Company.

18.    **Defendant David Perlmutter** ("Perlmutter") is, and has been at all relevant times, a director of the Company.

19.    **Defendant Steve Sanghi** ("Sanghi") is, and has been at all relevant times, a director of the Company.

20.    **Defendant Eyal Waldman** ("Waldman") is, and has been at all relevant times, a director of the Company and currently serves as the Company's Chief Executive Officer ("CEO") and President.

21.    **Defendant Gregory L. Waters** ("Waters") is, and has been at all relevant times, a director of the Company.

22.    The parties in paragraphs 12 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants"

- 3 -

23.     **Defendant NVIDIA Corporation** ("NVIDA" or "Guarantor") is a Delaware corporation with its principal executive offices at 2788 San Tomas Expressway, Santa Clara, CA 95051, and is a party to the Merger Agreement.

24.     **Defendant NVIDIA International Holdings Inc.** ("Parent") is a Delaware corporation with its principal executive offices at 2788 San Tomas Expressway, Santa Clara, CA 95051, and is a party to the Merger Agreement.

25.     **Defendant Teal Barvaz Ltd**., ("Merger Sub") is a company organized under the laws of the State of Israel, is a wholly owned subsidiary of Parent, and is a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the other public shareholders of Mellanox (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

27.     This action is properly maintainable as a class action because:

a.  The Class is so numerous that joinder of all members is impracticable.  As of February 15, 2019, there were 54,225,264 shares of Mellanox stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country.  The actual number of public shareholders of the Company will be ascertained through discovery;

b.  There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following: (i) whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy, in violation of Section 14(a) of the Exchange Act; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy;

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

28.  On March 11, 2019 the Company and NVIDIA issued a joint press release announcing the Proposed Transaction.  The press release stated in relevant part:

**NVIDIA to Acquire Mellanox for $6.9 Billion**

- Unites leaders in processing and interconnect for the high performance computing market
- Builds on the companies' long history of collaboration and joint innovation
- Expected to be accretive to NVIDIA's non-GAAP gross margin, non-GAAP EPS and free cash flow, immediately after close

SANTA CLARA, Calif., and YOKNEAM, Israel—March 11, 2019—NVIDIA and Mellanox today announced that the companies have reached a definitive agreement under which NVIDIA will acquire Mellanox. Pursuant to the agreement, NVIDIA will acquire all of the issued and outstanding common shares of Mellanox for $125 per share in cash, representing a total enterprise value of approximately $6.9 billion. Once complete, the combination is expected to be

immediately accretive to NVIDIA's non-GAAP gross margin, non-GAAP earnings per share and free cash flow.

The acquisition will unite two of the world's leading companies in high performance computing (HPC). Together, NVIDIA's computing platform and Mellanox's interconnects power over 250 of the world's TOP500 supercomputers and have as customers every major cloud service provider and computer maker.

The data and compute intensity of modern workloads in AI, scientific computing and data analytics is growing exponentially and has put enormous performance demands on hyperscale and enterprise datacenters. While computing demand is surging, CPU performance advances are slowing as Moore's law has ended. This has led to the adoption of accelerated computing with NVIDIA GPUs and Mellanox's intelligent networking solutions.

Datacenters in the future will be architected as giant compute engines with tens of thousands of compute nodes, designed holistically with their interconnects for optimal performance.

An early innovator in high-performance interconnect technology, Mellanox pioneered the InfiniBand interconnect technology, which along with its high-speed Ethernet products is now used in over half of the world's Top500 supercomputers and in many leading hyperscale data centers.

With Mellanox, NVIDIA will optimize datacenter-scale workloads across the entire computing, networking and storage stack to achieve higher performance, greater utilization and lower operating cost for customers.

"The emergence of AI and data science, as well as billions of simultaneous computer users, is fueling skyrocketing demands on the world's datacenters," said Jensen Huang, founder and CEO of NVIDIA. "Addressing this demand will require holistic architectures that connect vast numbers of fast computing nodes over intelligent networking fabrics to form a giant datacenter-scale compute engine.

"We're excited to unite NVIDIA's accelerated computing platform with Mellanox's world-renowned accelerated networking platform under one roof to create next-generation datacenter-scale computing solutions. I am particularly thrilled to work closely with the visionary leaders of Mellanox and their amazing people to invent the computers of tomorrow."

"We share the same vision for accelerated computing as NVIDIA," said Eyal Waldman, founder and CEO of Mellanox. "Combining our two companies comes as a natural extension of our longstanding partnership and is a great fit given our common performance-driven cultures. This combination will foster the creation of powerful technology and fantastic opportunities for our people."

The companies have a long history of collaboration and joint innovation, reflected in their recent contributions in building the world's two fastest supercomputers, Sierra and Summit, operated by the U.S. Department of Energy. Many of the world's top cloud service providers also use both NVIDIA GPUs and Mellanox interconnects. NVIDIA and Mellanox share a common performance-centric culture that will enable seamless integration.

Once the combination is complete, NVIDIA intends to continue investing in local excellence and talent in Israel, one of the world's most important technology centers. Customer sales and support will not change as a result of this transaction.

**Additional Transaction Details**

Post close, the transaction is expected to be immediately accretive to NVIDIA's non-GAAP gross margin, non-GAAP earnings per share and free cash flow. NVIDIA intends to fund the acquisition through cash on its balance sheet. In addition, there is no change to its previously announced capital return program for the rest of fiscal 2020. The transaction has been approved by both companies' boards of directors and is expected to close by the end of calendar year 2019, subject to regulatory approvals as well as other customary closing conditions, including the approval by Mellanox shareholders of the merger agreement.

## THE MATERIALLY INCOMPLETE AND MISLEADING PROXY

29.     On April 22, 2019 Defendants filed its incomplete and misleading Proxy with the SEC and disseminated it to the Company's shareholders.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.

30.     Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.

31.     The Proxy describes the fairness opinion of the Company's financial advisor, J.P. Morgan, and the various valuation analyses it performed in support of its opinion.  However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, the Company's shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's common shareholders.

32.     Regarding J.P. Morgan's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the basis for the Company management's estimate of a 2.5% terminal value growth rate in the industry in which the Company operates; (ii) any details supporting  J.P. Morgan's decision to apply a perpetual growth rate ranging from 2.0% to 3.0% to the unlevered free cash flow of the Company; and (iii) details of its analysis of the weighted average cost of capital of the Company which served as the basis for its range of discount rates of 10.0% to 12.0%.

33.     Further, regarding Credit Suisse's *Discounted Cash Flow Analysis*, the Proxy fails to disclose: (i) why Credit Suisse applied terminal value multiples of 7.5x to 10.5x, (ii) what the calculated terminal values were, and (iii) why discount rates of 9% to 12% are appropriate. Without further disclosure, shareholders are unable to compare Credit Suisse's calculations with the Company's financial projections.

34.     Regarding the Company's financial projections, the Proxy fails to disclose or provide: (i) a reconciliation of all non-GAAP to GAAP metrics; and (ii) all line items used to calculate EBITDA.

35.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming stockholder vote, Plaintiff and the other members of the Class will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(A) OF THE EXCHANGE ACT AND RULE 14A-9 PROMULGATED THEREUNDER

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

1    Commission may prescribe as necessary or appropriate in the public interest or for the protection

2    of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

3    authorization in respect of any security (other than an exempted security) registered pursuant to

4    section 78l of this title." 15 U.S.C. § 78n(a)(1).

5          38.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

6    Act, provides that communications with shareholders in a recommendation statement shall not

7    contain "any statement which, at the time and in the light of the circumstances under which it is

8    made, is false or misleading with respect to any material fact, or which omits to state any material

9    fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §

10   240.14a-9.

11         39.     Defendants have issued the Proxy with the intention of soliciting the support of

12   shareholders for the Proposed Transaction.   Upon information and belief, each Defendant

13   reviewed and authorized the dissemination of the Proxy, which fails to provide critical information

14   detailed above.

15         40.     In doing so, Defendants made untrue statements of material fact and/or omitted

16   material facts necessary to make the statements made not misleading. Each Defendant, by virtue of

17   their roles in the Proposed Transaction, was aware of the omitted material information but failed

18   to disclose such information, in violation of Section 14(a).  Defendants therefore had reasonable

19   grounds to believe material facts existed that were misstated or omitted from the Proxy, but

20   nonetheless failed to obtain and disclose such information to shareholders although they could

21   have done so without extraordinary effort.

22         41.     The Proxy is materially misleading and omits material facts that are necessary to

23   render it not misleading. Defendants undoubtedly reviewed and relied upon the omitted

24   information identified above in connection with their decision to approve and recommend the

25   Proposed Merger.

26         42.     Defendants knew or should have known that the material information identified

27   above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be

28   materially incomplete and misleading. Indeed, Defendants were required to be particularly

attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

43.     Defendants violated the securities laws in preparing and reviewing the Proxy. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact violates securities laws.  Defendants and the Individual Defendants chose to omit material information from the Proxy or failed to notice the material omissions in the Proxy upon reviewing it, which the Individual Defendants were required to do in their roles as officers and directors of the Company.

44.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Company's other shareholders, each of whom will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

45.     Plaintiff and the Company's other shareholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS**
**OF SECTION 20(A) OF THE EXCHANGE ACT**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

50.     In addition, as set forth in the Proxy sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Company's other shareholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A)     Declaring that the Proxy is materially false and misleading;

(B)    Enjoining preliminarily and permanently, the Proposed Transaction until the Proxy is cured;

(C)    In the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D)    Directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(E)    Awarding Plaintiff of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F)    Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 3, 2019

By: /s/ Jon A. Tostrud
Jon A. Tostrud, Esq.
**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Ste. 2100
Los Angeles, CA. 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: jtostrud@tostrudlaw.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
Gregory M. Egleston
440 Park Avenue South, 5th Floor
New York, NY 10016
Tel: (212) 983-1300
Fax: (212) 983-0383
Email: tjmckenna@gme-law.com
Email: gegleston@gme-law.com

*Attorneys for Plaintiff*

## CERTIFICATION OF NAMED PLAINTIFF

I, <u>Lewis Stein</u> ("Plaintiff") hereby retain the Gainey McKenna & Egleston and such co-counsel it deems appropriate to associate with, subject to their investigation, to pursue my claims on a contingent fee basis and for counsel to advance the costs of the case, with no attorneys fee owing except as may be awarded by the court at the conclusion of the matter and paid out of any recovery obtained and I also hereby declare the following as to the claims asserted under the law that:

Plaintiff reviewed the complaint to be filed in this matter and authorized the filing of a complaint based on similar allegations in a related or amended complaint.

Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action.

Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

Plaintiff's transactions in *Mellanox Technologies, Ltd.* securities that are the subject of this action during the Class Period are as follows:

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 200 | MLNX | Buy | 08/21/2018 | $80.10 |
| 50 | MLNX | Buy | 11/30/2018 | $92.79 |
|  |  |  |  |  |

**Please list other transactions on a separate sheet of paper, if necessary.**

Plaintiff has sought to serve as a class representative in the following cases within the last three years:

*Stein v. U.S Xpress, et al.*, 19-cv-0098 (E.D. Tenn. 2019)

Plaintiff has complete investment authority and is the agent and attorney-in-fact with full power and authority to bring suit to recover for investment losses.

Plaintiff will not accept any payment serving as a representative party on behalf of the class beyond Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of May 2019

*/s/ Lewis Stein*
Lewis Stein